STATE OF NEBRASKA, APPELLEE, V.
JEFFREY HESSLER, APPELLANT.
741 N.W.2d 406

Filed November 30, 2007.    No. S-05-629.

James R. Mowbray and Jeffery A. Pickens, of Nebraska Commission on Public Advocacy, for appellant.

Jon Bruning, Attorney General, and J. Kirk Brown for appellee.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ., and HANNON, Judge, Retired.

MILLER-LERMAN, J.

## I. NATURE OF CASE

Jeffrey Hessler was convicted in the district court for Scotts Bluff County of first degree murder, kidnapping, first degree sexual assault on a child, and use of a firearm to commit a felony. Following Hessler's conviction for first degree murder, the jury found that three statutory aggravating circumstances existed. After the convictions and findings of aggravating circumstances but prior to sentencing, the court granted Hessler's pro se request to waive counsel for the remainder of the case. Hessler appeared pro se at the sentencing proceeding. In its sentencing order, the sentencing panel accepted the jury's verdicts finding that three statutory aggravating circumstances existed. The panel further concluded that no statutory or nonstatutory mitigating factors were established, that mitigating factors did not approach or exceed the weight of the aggravating circumstances, and that a death sentence would not be excessive or disproportionate to sentences previously imposed in similar circumstances. The panel therefore sentenced Hessler to death for first degree murder; to life imprisonment without parole for kidnapping; to 40 to 50 years' imprisonment for sexual assault; and to 20 to 25 years' imprisonment for the firearms conviction, with each sentence to be served consecutively to the others.

This automatic appeal followed. After Hessler filed a pro se brief assigning no error, we appointed counsel to represent Hessler on appeal. Appointed counsel filed a brief assigning various errors with respect to the guilt, aggravation, and sentencing phases of the trial. We affirm Hessler's convictions and sentences.

## II. STATEMENT OF FACTS

On the morning of February 11, 2003, 15-year-old Heather Guerrero left her home in Gering, Nebraska, to make deliveries on her newspaper route. Heather never returned home. A search was conducted, and on the morning of February 12, Heather's body was found in the basement of an abandoned house near Lake Minatare, Nebraska.

During the investigation of Heather's disappearance, a witness who was walking his dog on the morning of February 11, 2003, reported that he had heard a scream and had seen a silver or tan Nissan Altima drive by at a high rate of speed. A car matching that description belonged to a friend of Hessler's who had allowed Hessler to drive the car. A search of the car revealed three boxes of live ammunition, some spent casings, and Hessler's wallet. After police questioned Hessler, Hessler gave police his semiautomatic handgun. In response to interrogation, Hessler admitted to having sex with Heather but asserted that it was consensual. Hessler said that after Heather indicated she would not keep the encounter secret, he "freaked out," took her to the basement of the abandoned house, and shot her.

On February 26, 2003, the State filed an information charging Hessler with five counts in connection with the death of Heather: count I, premeditated murder; count II, felony murder; count III, kidnapping; count IV, first degree sexual assault; and count V, use of a firearm to commit a felony. In connection with counts I and II, the State gave notice of aggravating circumstances and alleged that under Neb. Rev. Stat. § 29-2523 (Cum. Supp. 2006), (1) Hessler had a substantial prior history of serious assaultive or terrorizing criminal activity (§ 29-2523(1)(a)); (2) the murder was committed in an effort to conceal the commission of the crimes of the kidnapping and sexual assault of Heather and the sexual assault of another girl, J.B. (§ 29-2523(1)(b)); and (3) the murder was especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence (§ 29-2523(1)(d)).

On May 19, 2003, Hessler made an oral motion to plead guilty to count II, felony murder, and to count IV, first degree sexual assault. The court responded that it would deny the motion until it had time to research the issue. Hessler filed a written motion to plead guilty on June 4, and a hearing was held June 18. The court denied the motion in an order dated July 25. The court stated that Hessler did not have an absolute right to have his plea accepted and that accepting the plea would cause more uncertainty than finality because both counts I and II charged Hessler with first degree murder and accepting a plea on one of the counts would create confusion as to whether trial was necessary or permitted on the other count. Hessler attempted to appeal the July 25 order, but this court dismissed the appeal for lack of jurisdiction. *State v. Hessler*, 267 Neb. xxii (No. S-03-967, Feb. 11, 2004).

On April 9, 2004, Hessler filed a motion to plead guilty to the count of felony murder and to all remaining counts other than premeditated murder. A hearing on the motion was scheduled for April 14. On that day, the State filed a motion to dismiss the count of felony murder. At the hearing, the court first considered the State's motion to dismiss. The court sustained the motion to dismiss the count of felony murder and then denied Hessler's motion to plead guilty to that count. Hessler declined to plead guilty to the remaining counts. Hessler attempted to appeal the April 14 order, but this court again dismissed the appeal. *State v. Hessler*, 268 Neb. xxiv (No. S-04-497, Sept. 1, 2004), *cert. denied* 543 U.S. 1161, 125 S. Ct. 1320, 161 L. Ed. 2d 131 (2005).

On October 6, 2004, Hessler filed a plea in bar in which he asserted that he had previously been convicted and sentenced for an offense relating to another victim which he claimed was an element of the capital murder charge set forth in this case. During the investigation of the death of Heather, police linked Hessler to the August 20, 2002, sexual assault of J.B., who, like Heather, was a teenage girl who was delivering newspapers at the time she was assaulted. The State charged Hessler in connection with the sexual assault of J.B. After the crimes were committed and the charges filed in the instant case, on July 14, 2003, Hessler pled no contest to first degree sexual assault of

J.B. Hessler was sentenced on August 21 to imprisonment for 30 to 42 years for the sexual assault of J.B. He did not appeal the conviction or sentence. In the plea in bar filed in this case, Hessler asserted that the Double Jeopardy Clause barred use of the sexual assault of J.B. to prove an aggravating circumstance in the present case because such use would subject him to a second prosecution and punishment for the sexual assault of J.B. On November 17, 2004, the court overruled Hessler's plea in bar. Hessler attempted to appeal the denial, but on November 24, we dismissed the appeal for lack of jurisdiction. *State v. Hessler*, 268 Neb. xxv (No. S-04-1304, Nov. 24, 2004).

Jury selection in Hessler's trial began November 29, 2004. Jury summonses had been sent to 250 people, and potential jurors were sent a supplemental questionnaire which asked, inter alia, whether the potential juror had formed an opinion about Hessler's guilt or innocence and the basis for such opinion. The venire included 107 potential jurors. The court excused 65 potential jurors, leaving 42 potential jurors upon whom the parties could exercise peremptory challenges. Hessler made motions to excuse six potential jurors for cause. The court overruled the motions after questioning the potential jurors regarding, inter alia, whether they could set aside their opinions and render impartial verdicts. Hessler later used peremptory challenges to remove four of the potential jurors he had sought to excuse, and the State used a peremptory challenge to remove one.

Only one of the six potential jurors that Hessler moved to excuse became a member of the jury. That juror was R.C.F. In response to questioning by the court and by Hessler, R.C.F. stated that he had formed the opinion that Hessler was guilty based on newspaper reports. R.C.F. initially stated, "I do not presume that he's innocent, no, sir." However, R.C.F. stated in response to questioning from the court that his opinion was not so strong that he could not set it aside and take an oath to render a fair and impartial verdict based solely upon the evidence presented at trial and the instructions given by the court. In reply to a question from Hessler's counsel, R.C.F. responded that Hessler did not need to prove his innocence and stated: "If I felt without a shadow of a doubt that he was guilty I would

say so but I would not . . . Hessler does not prove that he's innocent or guilty, I realize that comes from the State, not from [the defense]." R.C.F. also stated:

> I believe in the death penalty but I also believe in a fair and impartial trial and I can set aside those feelings and those opinions and listen to the facts.
>
> . . . .
>
> . . . [I]f the facts are such that the death penalty is not warranted, then I could be very fair and impartial.

Following examination of the venire but before the exercise of peremptory challenges, Hessler made an oral motion to change venue. Hessler asserted that he could not receive a fair trial in Scotts Bluff County and argued that his assertion was supported by responses to questionnaires indicating that a large number of potential jurors had formed the opinion that he was guilty. The court overruled the motion to change venue.

At trial, a videotape of the February 12, 2003, interrogation of Hessler was played to the jury. Other evidence at trial included, inter alia, testimony of a firearms examiner who opined that Hessler's gun fired the cartridge found near Heather's body, testimony of a medical technologist who testified that DNA testing could not exclude Heather as a contributor to DNA found on Hessler's clothing and in the car Hessler was using, and testimony of a doctor who performed an autopsy on Heather's body and who testified that a gunshot wound to the head caused her death and that injuries to her vaginal area could be consistent with either forcible penetration or consensual sex. On December 7, 2004, the jury returned verdicts of guilty on the counts of first degree murder, kidnapping, first degree sexual assault, and use of a firearm to commit a felony.

Following the verdicts, and prior to and during the aggravation hearing, Hessler filed various motions, including, inter alia, motions to declare the Nebraska death penalty statutes unconstitutional on various bases, a motion based on double jeopardy grounds to prohibit the State from presenting evidence at the aggravation hearing regarding the sexual assault of J.B. and from seeking a verdict on the aggravating circumstance found in § 29-2523(1)(a) based on such evidence, and a motion for a jury instruction at the aggravation hearing requiring the jury

to make unanimous, written findings of fact in support of any aggravating circumstances the jury found to exist. Although Hessler later waived counsel, Hessler was represented by counsel in connection with the court's consideration of his various motions, including his constitutional challenge to the death penalty statutes, his Double Jeopardy challenge involving J.B., and his jury instruction request. The court overruled the motions. At the aggravation hearing, the State presented, inter alia, evidence of the sexual assault of J.B. On December 9, 2004, the jury found that all three aggravating circumstances alleged by the State existed.

On March 31, 2005, Hessler filed a pro se motion titled "Motion to Invoke My Sixth-Amendment Right and to Expurgate the Advocate of the State and to Delineate Myself." The court had a hearing scheduled to consider various motions filed by counsel on the day Hessler filed his pro se motion. At the hearing, the court first considered Hessler's pro se motion. After questioning Hessler, the court determined that by the motion, Hessler sought to remove his counsel, waive his right to counsel, and appear pro se at sentencing. The court then questioned Hessler about his "current status and mental abilities" which included questions regarding his age, his education, and his understanding of the proceedings. In response to the questions, Hessler indicated that he had been prescribed unspecified "antipsychotics" and "antihypnotic" drugs but that he had not taken his medications that particular day. The court further questioned Hessler regarding his understanding of his right to counsel, of what he would forgo if he waived his right to counsel, and of what would be required of him in order to represent himself in further proceedings. In response to questions regarding his ability to represent himself against the State, which would be represented by attorneys, Hessler said, "I've got God on my side, God's guiding me. . . . I just go by what God tells me." He also indicated that he was not concerned "because [his] wishes are the same as the State." Hessler further indicated that although he was not generally dissatisfied with his counsel's performance, he wanted to represent himself because counsel "refuse[d] to comply with [his] wishes." Following such questioning, the court found that Hessler had "knowingly,

intelligently, [and] voluntarily decided to represent himself in this case." The court nevertheless instructed counsel to prepare for the sentencing hearing and to be on standby at sentencing in the event that Hessler changed his mind and wished to consult with counsel. Although Hessler indicated his intent to withdraw various motions made by counsel, including a motion challenging electrocution as a method of execution, the court allowed counsel to present evidence in support of such motions in order to make a complete record.

On May 16, 2005, the sentencing proceeding was held before a sentencing panel that included the trial judge and two other judges. Hessler appeared pro se but his former counsel was present on standby. At the beginning of the hearing, the presiding judge again questioned Hessler regarding his decision to appear pro se. Hessler indicated that he still wanted to appear pro se, that he understood his right to counsel and the consequences of proceeding without counsel, and that no one had made promises or threats or done anything to get him to waive counsel. The court again stated its finding that Hessler knowingly, intelligently, and voluntarily waived his right to counsel but told Hessler that he could inform the court if at any time he wished to be assisted by standby counsel.

At the sentencing hearing, Hessler offered into evidence, and the court received, a document signed by Hessler titled "Interlocutory Statement of the Defendant." In the document, Hessler requested the sentencing panel "to bring the Justice and Wrath of GOD onto myself." He further requested that "the True Intentions of This Court follows GOD'S COMMANDS and My Wishes and that is to ONLY to be the following . . . . I, JEFFREY ALAN HESSLER , MUST BE PUT TO DEATH WITHOUT DIALECTIC."

The document continued for several more pages in which Hessler discussed his remorse for the death of Heather, his opinion that death was the proper punishment, his feelings regarding the progress of the trial, and his life in general. Hessler offered no other evidence which would bear on mitigating circumstances or other factors to be considered in connection with sentencing.

The State asked the court "to take judicial notice of all the exhibits that were received at trial and the aggravation hearing

as well." The court had previously received into evidence "a two volume transcript of the proceedings of both the trial and the aggravation hearing," and the court stated that it would "make all the exhibits from the two proceedings available for the three-judge panel for their consideration and deliberations." The State offered no further evidence. Hessler declined to make a closing statement in his own behalf. The State made a closing statement in which it urged the panel to impose a death sentence for first degree murder and to impose the maximum sentences on the other counts. Hessler declined to rebut the State's closing statement. The court informed Hessler that he had a "final opportunity to make a statement to the court" regarding anything he wanted the court to consider. Hessler declined to make a statement.

Later that day, the sentencing panel announced its decision and entered its sentencing order. The panel recited the relevant facts and, finding the facts true beyond a reasonable doubt, unanimously accepted the jury's verdicts. The panel next found that the three asserted aggravating circumstances existed beyond a reasonable doubt and unanimously accepted the jury's findings regarding aggravating circumstances. The panel then considered mitigating circumstances but unanimously concluded that no statutory and no nonstatutory mitigating factors were established in this case. The panel further unanimously concluded beyond a reasonable doubt that an imposition of death would not be excessive or disproportionate to sentences previously imposed in similar circumstances. The panel finally unanimously concluded that (1) aggravating circumstances justified imposition of a death sentence; (2) mitigating circumstances did not approach or exceed the weight given to aggravating circumstances; and (3) a death sentence would not be excessive or disproportionate to penalties imposed in similar cases, considering both the crime and the defendant. The panel imposed sentences of death for first degree murder, life imprisonment without parole for kidnapping, imprisonment for 40 to 50 years for first degree sexual assault on a child, and imprisonment of 20 to 25 years for use of a firearm to commit a felony. The panel ordered that each sentence be served consecutively to the others.

This automatic appeal followed.

### III. ASSIGNMENTS OF ERROR

On August 9, 2005, Hessler filed a pro se appellant's brief in which he assigned no error. Instead, in the brief, Hessler repeated much of the content of the document he entered into evidence at the sentencing hearing. A replacement brief order was issued by the Clerk of the Supreme Court, and in response, Hessler informed this court that he did not want nor did he file this appeal and that he would not file any more briefs or other statements. This court on September 28, 2005, appointed counsel to represent Hessler in this automatic appeal. Counsel subsequently filed an appellant's brief on Hessler's behalf.

Hessler, through counsel, asserts that the district court erred in (1) denying his motions to plead guilty to felony murder; (2) violating the Double Jeopardy Clause by allowing the State to use the sexual assault of J.B. to prove an aggravating circumstance; (3) failing to excuse for cause potential jurors who had formed opinions regarding Hessler's guilt; (4) overruling his motion to change venue; (5) overruling his motion to declare Nebraska death penalty statutes unconstitutional on various bases, including (a) vagueness of aggravating circumstances described in § 29-2523(1)(a), (b), and (d); (b) failure to require or allow the jury to determine mitigating circumstances, to assign a weight to aggravating circumstances, and to determine the sentence; and (c) unconstitutionally penalizing a defendant's exercise of the right to a jury trial on aggravating circumstances; (6) denying his request for an instruction in the aggravation phase requiring the jury to make unanimous, written findings of fact to support each aggravating circumstance found to exist; (7) granting his request to waive counsel and appear pro se at sentencing and failing to make a determination regarding his competency to waive counsel; and (8) receiving into evidence at sentencing the records of the guilt and aggravation phases of the trial.

### IV. STANDARDS OF REVIEW

■ A trial court is given discretion as to whether to accept a guilty plea; this court will overturn that decision only where

there is an abuse of discretion. *State v. Brown*, 268 Neb. 943, 689 N.W.2d 347 (2004).

■ The retention or rejection of a venireperson as a juror is a matter of discretion with the trial court and is subject to reversal only when clearly wrong. *State v. Quintana*, 261 Neb. 38, 621 N.W.2d 121 (2001).

■ A motion for change of venue is addressed to the discretion of the trial judge, whose ruling will not be disturbed absent an abuse of discretion. *State v. Rodriguez*, 272 Neb. 930, 726 N.W.2d 157 (2007).

■ The constitutionality of a statute is a question of law, regarding which the Nebraska Supreme Court is obligated to reach a conclusion independent of the determination reached by the trial court. *State v. Marrs*, 272 Neb. 573, 723 N.W.2d 499 (2006).

■ To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Blair*, 272 Neb. 951, 726 N.W.2d 185 (2007).

■ In determining whether a defendant's waiver of counsel was voluntary, knowing, and intelligent, an appellate court applies a "clearly erroneous" standard of review. *State v. Gunther*, 271 Neb. 874, 716 N.W.2d 691 (2006).

## V. ANALYSIS

### 1. No Abuse of Discretion in Denial of Motions to Plead Guilty to Felony Murder

In his first assignment of error, Hessler asserts that the district court erred when it denied his motions to plead guilty to the felony murder count. Although the assignment of error mentions the granting of the State's motion to dismiss the felony murder count, Hessler makes no specific argument regarding the dismissal. We therefore treat the assignment of error as limited to the denial of Hessler's motions to plead guilty to felony murder. See *In re Interest of Michael U.*, 273 Neb. 198, 728 N.W.2d 116 (2007) (errors assigned but not argued will not be

addressed by appellate court). A trial court is given discretion as to whether to accept a guilty plea; this court will overturn that decision only where there is an abuse of discretion. *Brown, supra.* We conclude that the court did not abuse its discretion when it denied Hessler's motions to plead guilty to felony murder.

As noted above, the State originally charged Hessler with both premeditated murder and felony murder and denominated the two as separate counts in the information. Hessler twice moved the court to allow him to plead guilty to felony murder, and the court denied both motions. In its order denying Hessler's first motion to plead guilty, the court noted that if the plea to felony murder were accepted, there would be confusion as to whether Hessler should thereafter also be tried for premeditated murder. The court determined that accepting the plea "would create more uncertainty than finality, would not eliminate the need for a full trial of the facts either at the evidentiary phase or the sentencing phase, and would not significantly save costs or court time."

Hessler asserts that the court's reasons are clearly untenable. He argues that the State assumed the risk of his pleading to one count when it charged premeditated murder and felony murder as separate counts and that the court acted as a safety net and unfairly assisted the prosecution by saving it from this tactical error. Hessler asserts that he had valid reasons to plead guilty to felony murder, including a strategy to avoid the death penalty, his feelings of remorse and desire to accept responsibility for the crime, and a desire to spare his family and the victim's family the emotional trauma of a trial.

With regard to whether courts must accept a defendant's plea of guilty, we have stated:

> It is well established that a criminal defendant has no absolute right to have his or her plea of guilty or nolo contendere accepted even if the plea is voluntarily and intelligently made. . . . Our cases recognize that a trial court has a large measure of discretion in deciding whether to accept a guilty plea.

*State v. Brown,* 268 Neb. 943, 947, 689 N.W.2d 347, 351 (2004) (citations omitted). We stated in *Brown* that our jurisprudence

grants trial courts "wide discretion in rejecting plea agreements for substantive reasons." 268 Neb. at 950, 689 N.W.2d at 352. This court will overturn a decision on whether to accept a plea of guilty only where there is an abuse of discretion. *Id.* A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *State v. Davlin*, 272 Neb. 139, 719 N.W.2d 243 (2006).

Although we do not necessarily agree with each substantive reason recited by the court, we find no abuse of discretion in the decision to deny the motions to plead guilty to felony murder. Hessler had no absolute right to plead guilty, see *Brown, supra*, and therefore, the ruling did not deprive him of a substantial right. Nor did the ruling deny Hessler a just result. Hessler argues that his desire to plead guilty to felony murder was part of a strategy to avoid the death penalty. However, felony murder and premeditated murder are both theories of first degree murder subject to the death penalty. See *State v. Nesbitt*, 264 Neb. 612, 633, 650 N.W.2d 766, 785 (2002) ("premeditated murder and felony murder are simply alternate methods of committing first degree murder"). Had Hessler pled guilty to felony murder, he still would have stood convicted of first degree murder and the death penalty still would have been a possible sentence. Also, a plea to felony murder would not necessarily have spared Hessler's family and the victim's family the emotional trauma of a trial on other counts. With the death penalty still a possible sentence, trial still would have been required on the aggravating circumstances, and the sentencing panel still would have been required to consider the circumstances of the crime. The State likely would have presented much of the evidence it presented in the guilt phase of the trial at the aggravation and sentencing phases if Hessler had been allowed to plead.

Because the denial did not deprive Hessler of a substantial right or a just result, we conclude that the court's denial of Hessler's motions to plead guilty to felony murder was within the court's "wide discretion." See *Brown, supra*. We reject Hessler's first assignment of error.

## 2. No Double Jeopardy Violation in Use of Prior Sexual Assault of Another Victim to Prove Aggravating Circumstance

In his second assignment of error, Hessler asserts that the district court erred in various rulings. As Hessler argues this assignment of error, his general claim is that the court erred in allowing the State to use his prior sexual assault of J.B. to prove the aggravating circumstance of § 29-2533(1)(a), prior history of serious assaultive criminal activity, and that such use subjected him to a second punishment for that crime in violation of the Double Jeopardy Clause. We conclude that use of the prior sexual assault of J.B. to prove an aggravating circumstance did not violate the Double Jeopardy Clause.

Hessler argues that as the crime in the present case was charged, the sexual assault of J.B. was an element of the offense of capital murder, and that it violated the Double Jeopardy Clause to use the prior assault, for which he had already been tried and punished, as an element of another crime. In support of his argument, Hessler cites two U.S. Supreme Court cases, *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), and *Sattazahn v. Pennsylvania*, 537 U.S. 101, 123 S. Ct. 732, 154 L. Ed. 2d 588 (2003). In *Ring*, the U.S. Supreme Court, in holding that the Sixth Amendment requires that aggravating circumstances be found by a jury, stated that "aggravating factors operate as 'the functional equivalent of an element of a greater offense.'" 536 U.S. at 609 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)). In *Sattazahn*, three justices of the Court cited and quoted *Ring* and stated that "for purposes of the Sixth Amendment's jury-trial guarantee, the underlying offense of 'murder' is a distinct, lesser included offense of 'murder plus one or more aggravating circumstances.'" 537 U.S. at 111. In determining whether the Double Jeopardy Clause applied to capital sentencing proceedings to determine the existence of aggravating circumstances, the three justices found no reason to distinguish between what constitutes an offense for Sixth Amendment jury purposes and what constitutes an offense for Fifth Amendment double jeopardy purposes. *Id.* Hessler argues

that these statements in *Ring* and *Sattazahn* mean that aggravating circumstances are elements of the offense of capital murder and that therefore, the sexual assault of J.B., which was alleged as an aggravating circumstance, was a lesser-included offense of the capital murder of Heather.

We note initially that the Nebraska Legislature has provided that "the aggravating circumstances are not intended to constitute elements of the crime generally unless subsequently so required by the state or federal constitution." Neb. Rev. Stat. § 29-2519(2)(d) (Cum. Supp. 2006). We do not believe that the explanatory comments in *Ring* and *Sattazahn* lead to the conclusion that an aggravating circumstance should be treated as an element of capital murder, and we reject Hessler's suggestion that we treat an aggravating circumstance as an element of capital murder. In *Ring*, the Court referred to aggravating circumstances as the "functional equivalents" of elements only for the purpose of resolving the question of whether a jury was required to find aggravating circumstances. In *Schriro v. Summerlin*, 542 U.S. 348, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004), the Court stated that the holding in *Ring* did not alter the range of conduct that the statutes at issue subjected to the death penalty, but instead altered the method for determining whether conduct was punishable by death by requiring a jury determination of aggravating circumstances. These statements in *Schriro* indicate that the Court did not consider aggravating circumstances to be substantive elements of the crime of capital murder. Instead, the Court considered aggravating circumstances as functional equivalents of elements for the limited purpose of determining whether Sixth Amendment jury guarantees extended to findings of aggravating circumstances.

*Sattazahn v. Pennsylvania*, 537 U.S. 101, 123 S. Ct. 732, 154 L. Ed. 2d 588 (2003), also does not support Hessler's argument. The issue in *Sattazahn* was whether the Double Jeopardy Clause prohibited a second capital sentencing for the same crime. Three justices of the Court in *Sattazahn* stated, "If a jury unanimously concludes that a State has failed to meet its burden of proving the existence of one or more aggravating circumstances, double-jeopardy protections attach to that 'acquittal' on the offense of 'murder plus aggravating circumstance(s).'"

537 U.S. at 112. The three justices determined that double jeopardy protections would attach once a jury concluded that no aggravating circumstances existed and that therefore, a second capital sentencing would be prohibited. The Court in *Sattazahn* did not state that double jeopardy protections prohibited the use of evidence of prior crimes to establish an aggravating circumstance in a subsequent case involving a different crime. Furthermore, the portions of *Sattazahn* on which Hessler relies were from a section of the opinion that was joined by only three justices, and the views expressed by the three were not endorsed by a majority of the Court. See *State v. Mata*, 266 Neb. 668, 668 N.W.2d 448 (2003) (rejecting similar argument based on *Sattazahn*).

The issue in the present case is different from those in *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), and *Sattazahn, supra.* The issue here is whether evidence of a prior offense can be used to prove prior history as an aggravating circumstance in a capital trial involving a later offense. This question is more similar to the question of whether the sentence for a subsequent crime may be enhanced based on prior crimes. In *Witte v. United States*, 515 U.S. 389, 115 S. Ct. 2199, 132 L. Ed. 2d 351 (1995), the Court stated that the consideration of prior conduct in connection with sentencing for a subsequent offense does not result in additional punishment for such prior conduct. The Court stated that enhancement or recidivism statutes do not change the penalty imposed for the earlier offense and stated:

> In repeatedly upholding such recidivism statutes, we have rejected double jeopardy challenges because the enhanced punishment imposed for the later offense "is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes," but instead as "a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one."

515 U.S. at 400.

■ Under this reasoning, we determine that the use of a prior offense to prove an aggravating circumstance under § 29-2523(1)(a) does not increase the penalty for the prior offense and does not expose the defendant to new jeopardy for

such offense. Instead, the finding of an aggravating circumstance is used to increase the potential punishment for the latest crime which in the present case is first degree murder. We therefore conclude that because the use of evidence of a prior offense to prove an aggravating circumstance under § 29-2523(1)(a) does not expose the defendant to new jeopardy for the prior offense, such use does not violate the Double Jeopardy Clause.

In sum, in the present case, evidence regarding the sexual assault of J.B. was used to prove that an aggravating circumstance existed and to enhance the potential punishment for Hessler's conviction for the first degree murder of Heather. Such evidence was not used to prove a substantive element of the crime of first degree murder, and the use of such evidence did not subject Hessler to additional punishment for the sexual assault of J.B. We conclude that the use of evidence of Hessler's sexual assault of J.B. did not violate the Double Jeopardy Clause and that Hessler's second assignment of error is without merit.

### 3. No Reversible Error in Overruling of Motions to Excuse Jurors for Cause

In his third assignment of error, Hessler asserts that the district court erred when it overruled his motions to excuse various potential jurors for cause. The retention or rejection of a venireperson as a juror is a matter of discretion with the trial court and is subject to reversal only when clearly wrong. *State v. Quintana*, 261 Neb. 38, 621 N.W.2d 121 (2001). The court overruled Hessler's challenges with respect to six potential jurors, but in his brief, Hessler makes arguments with respect to only five of the six. Hessler argues that the five should have been excused for cause because each person had formed the opinion that Hessler was guilty and did not adequately demonstrate that he or she could act as an impartial juror despite such opinion. Only one of the five, R.C.F., actually became a member of the jury. Three were removed by Hessler's use of peremptory challenges, and one was removed by the State's use of a peremptory challenge. We conclude that reversal is not warranted based on those challenged individuals who did not become members of the jury and that the court did not err in overruling Hessler's motion to excuse R.C.F.

Hessler argues that each potential juror should have been struck for cause pursuant to Neb. Rev. Stat. § 29-2006(2) (Reissue 1995), which states that good cause to challenge a juror includes that "he has formed or expressed an opinion as to the guilt or innocence of the accused." Section 29-2006(2) further provides that if a potential juror has formed an opinion, the court should examine him or her regarding the grounds for such opinion. If the opinion was formed based upon "conversations with witnesses of the transactions or reading reports of their testimony or hearing them testify," dismissal is mandatory. *Id.* See, also, *State v. Myers*, 190 Neb. 466, 209 N.W.2d 345 (1973). However, if the opinion was formed based on "reading newspaper statements, communications, comments or reports, or upon rumor or hearsay," then the person may still serve if (1) the potential juror "shall say on oath that he feels able, notwithstanding such opinion, to render an impartial verdict upon the law and the evidence" and (2) the court is satisfied that the potential juror "is impartial and will render such verdict." § 29-2006(2).

We have stated that "the erroneous overruling of a challenge for cause will not warrant reversal unless it is shown on appeal that an objectionable juror was forced upon the challenging party and sat upon the jury after the party exhausted his or her peremptory challenges." *State v. Quintana*, 261 Neb. at 52, 621 N.W.2d at 134. In this case, four of the five potential jurors that Hessler complains of on appeal were struck by the use of peremptory challenges. Under *Quintana*, there can be no reversal based on a challenge to a potential juror if that person was not ultimately included on the jury, even if the defendant was required to use a peremptory challenge to remove the person. Therefore, reversal is not warranted in this case based on the overruling of Hessler's challenges to those persons who did not become members of the jury.

The only challenged individual who became a member of the jury was R.C.F. Although R.C.F. initially stated that he had formed an opinion regarding Hessler's guilt, R.C.F. also stated that such opinion was based on newspaper reports and that his opinion was not so strong that he could not set it aside and take an oath to render a fair and impartial verdict. Although during questioning by defense counsel, R.C.F. stated that "I do

not presume that he's innocent, no, sir," R.C.F. also said, inter alia, that "Hessler does not prove that he's innocent or guilty, I realize that comes from the State, not from [the defense]." Viewed in context, we believe that despite R.C.F.'s initial statements that he had formed an opinion and that he did not presume Hessler to be innocent, other later statements made by R.C.F. indicate he understood that as a juror, he needed to be and could be impartial, and that the State had the burden to prove Hessler guilty rather than Hessler's having the burden to prove himself innocent. We believe the court reasonably could have assessed R.C.F.'s statements and his demeanor and concluded that R.C.F. could render an impartial verdict. In this respect, we note that deference is given to a trial court's determinations in these matters. The U.S. Supreme Court recently stated that in decisions regarding challenges to potential jurors, "[d]eference to the trial court is appropriate because it is in a position to assess the demeanor of the venire, and of the individuals who compose it, a factor of critical importance in assessing the attitude and qualifications of potential jurors." *Uttecht v. Brown*, 551 U.S. 1, 9, 127 S. Ct. 2218, 167 L. Ed. 2d 1014 (2007). Based on our review of the questioning of R.C.F., and taking R.C.F.'s responses as a whole and giving proper deference to the court's assessment of R.C.F.'s demeanor, we conclude that the court was not clearly erroneous in overruling Hessler's motion to excuse R.C.F.

Reversal cannot be based on challenges to potential jurors who did not become members of the jury, and the court was not clearly wrong when it overruled the motion to excuse R.C.F. We therefore reject Hessler's third assignment of error.

### 4. No Error in Denial of Motion to Change Venue

In his fourth assignment of error, Hessler asserts that the district court erred in denying his request to change venue on the basis that he could not receive a fair trial in Scotts Bluff County. A motion for change of venue is addressed to the discretion of the trial judge, whose ruling will not be disturbed absent an abuse of discretion. *State v. Rodriguez*, 272 Neb. 930, 726 N.W.2d 157 (2007). We conclude that the court did not abuse its discretion when it denied Hessler's request to change venue.

Hessler did not move to change venue prior to jury selection, and he did not offer evidence regarding newspaper stories or other publicity regarding the crime. Instead, his arguments in favor of changing venue were based on voir dire examinations of potential jurors. Hessler noted that a large number of potential jurors had seen or heard reports of the crime and had formed opinions regarding Hessler's guilt. He argues on appeal that the court did not exercise sufficient care during jury selection because the court did not strike various persons for cause and because R.C.F. became a member of the jury. Hessler asserts that jury selection was complicated by the large number of persons who had formed opinions based on news reports, and he notes that many had to be excused based on such opinions. Hessler argues that the jury selection process demonstrated that "local conditions and pretrial publicity made it impossible for [him] to secure a fair and impartial jury in Scotts Bluff County," brief for appellant at 62, and that therefore, he was denied his right to an impartial jury.

In *State v. Quintana*, 261 Neb. 38, 54, 621 N.W.2d 121, 135 (2001), we noted that jurors who had heard publicity about the case "agreed that they could set aside any information that they knew about the case and that they would make decisions solely from what they heard in court." Because the record in *Quintana* showed that an impartial jury had been chosen, we concluded that the defendant had not shown that he could not receive a fair trial in the county at issue and that the court did not abuse its discretion in denying the defendant's motion to change venue.

Similar to *Quintana*, we determine that Hessler has not shown that a change of venue was necessary, because an impartial jury was in fact selected, and that Hessler therefore did not show that he could not receive a fair trial in Scotts Bluff County. As noted above, R.C.F. was the only person actually on the jury of whom Hessler complains on appeal. As we determined above, the record shows that in response to questioning, R.C.F. indicated that he could render an impartial verdict. Hessler makes no other argument that the jury was not impartial; he argues only that it was difficult to select a jury because of alleged partiality in the venire.

Because Hessler has not shown that his actual jury was partial, he has not shown that it was impossible to seat an impartial jury or that he could not receive a fair trial in Scotts Bluff County. We therefore conclude that the court did not abuse its discretion when it denied Hessler's motion for change of venue, and we reject his fourth assignment of error.

## 5. Death Penalty Statutes Not Shown to Be Unconstitutional

In his fifth assignment of error, Hessler asserts that the district court erred when it denied his motions to declare the Nebraska death penalty statutes unconstitutional. The constitutionality of a statute is a question of law, regarding which the Nebraska Supreme Court is obligated to reach a conclusion independent of the determination reached by the trial court. *State v. Marrs*, 272 Neb. 573, 723 N.W.2d 499 (2006). Hessler argues that the death penalty statutes are unconstitutional in various respects. He asserts first that the three statutory aggravating circumstances alleged in this case are unconstitutionally vague and indefinite. The aggravating circumstances alleged in this case were § 29-2523(1)(a), "substantial prior history of serious assaultive or terrorizing criminal activity"; § 29-2523(1)(b), "murder was committed in an effort to conceal the commission of a crime"; and § 29-2523(1)(d), murder that is "especially heinous, atrocious, [and] cruel." Hessler also asserts that the death penalty statutes are unconstitutional with respect to the limited role the statutes give the jury in capital sentencing. He specifically argues that the statutes are unconstitutional in that they fail to allow the jury to consider mitigating circumstances, to assign a weight to aggravating circumstances, and to suggest, recommend, or determine whether a death sentence or a life sentence should be given. Hessler also argues that the statutory requirement that a sentencing panel determines the sentence even when a jury determines aggravating circumstances is an unconstitutional penalty on the defendant's exercise of his or her right to a jury trial in the aggravation phase. As a matter of law, we reject each of Hessler's assertions that the Nebraska death penalty statutes are unconstitutional.

### (a) Aggravating Circumstances

With respect to § 29-2523(1)(a), (b), and (d), Hessler asserts that each of these aggravating circumstances is unconstitutionally vague. We note that this court has previously rejected similar challenges regarding each of the aggravating circumstances. Challenges to § 29-2523(1)(a) were rejected in *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000); *State v. Ryan*, 248 Neb. 405, 534 N.W.2d 766 (1995); and *State v. Holtan*, 197 Neb. 544, 250 N.W.2d 876 (1977), *disapproved on other grounds, State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986). Challenges to § 29-2523(1)(b) were rejected in *Bjorklund, supra*; *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), *modified* 255 Neb. 889, 587 N.W.2d 673 (1999); and *State v. Moore*, 250 Neb. 805, 553 N.W.2d 120 (1996), *disapproved on other grounds, State v. Reeves*, 228 Neb. 511, 604 N.W.2d 151 (2000). And challenges to § 29-2523(1)(d) were rejected in *State v. Gales*, 269 Neb. 443, 694 N.W.2d 124 (2005); *Bjorklund, supra*; and *State v. Ryan*, 233 Neb. 74, 444 N.W.2d 610 (1989). Hessler has cited no subsequent federal or state authority that would call such rulings into question, and Hessler has not articulated any persuasive arguments why our prior reasoning is faulty or any other reason why this court should overrule such precedent. We therefore reject Hessler's arguments that the aggravating circumstances set forth in § 29-2523(1)(a), (b), and (d) are unconstitutionally vague and indefinite.

### (b) Jury's Role in Capital Sentencing

Hessler's remaining arguments generally deal with the jury's role in capital sentencing. Under Nebraska death penalty sentencing statutes, after the guilt phase of the trial, the jury's only role in sentencing is to find whether aggravating circumstances exist. Pursuant to Neb. Rev. Stat. § 29-2520 (Cum. Supp. 2006), a jury determines whether aggravating circumstances exist unless the defendant waives his or her right to such a jury determination. Pursuant to Neb. Rev. Stat. § 29-2521 (Cum. Supp. 2006), after a jury has found aggravating circumstances or the defendant has waived the right to such jury determination, a panel of three judges determines the sentence, which

determination includes finding mitigating circumstances, balancing aggravating and mitigating circumstances, and conducting a proportionality review.

Hessler asserts that the death penalty statutes are unconstitutional because they do not require the jury to (1) find mitigating circumstances; (2) weigh aggravating and mitigating circumstances; or (3) suggest, recommend, or determine whether a sentence of life or a sentence of death should be imposed. Hessler argues that the statutory scheme is "irrational, unworkable, incoherent, and incapable of rendering a fair and just determination of life and death," brief for appellant at 68, because the sentencing panel, which was not the fact finder during the aggravation phase, is not in as good a position as the jury to assign a weight to the aggravating circumstances, to weigh aggravating circumstances against mitigating circumstances, and to determine the sentence.

In *State v. Gales*, 265 Neb. 598, 658 N.W.2d 604 (2003) (*Gales I*), we noted that the U.S. Supreme Court in *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), held that there is a Sixth Amendment right to have a jury determine the existence of any aggravating circumstance upon which a capital sentence is based. However, we determined in *Gales I* that the holding in *Ring* was not so broad as to require that a jury make additional determinations with regard to capital sentencing. We stated that we did not read *Ring* or other authority "to require that the determination of mitigating circumstances, the balancing function, or proportionality review be undertaken by a jury." 265 Neb. at 628-29, 658 N.W.2d at 627. In *State v. Gales*, 269 Neb. 443, 694 N.W.2d 124 (2005) (*Gales II*), we again rejected an argument that a jury is required to determine mitigating circumstances and to have input into the appropriate sentence in capital cases. We determined that the defendant in *Gales II* presented no basis to reconsider our decision in *Gales I*, and we noted that later holdings in the U.S. Supreme Court, see *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), only reinforced our prior decision.

Similarly, in the present case, Hessler has cited no authority that would require us to reconsider our decisions in *Gales I* and *Gales II*. While *Ring* requires that a jury find aggravating

circumstances, neither *Ring* nor other authority requires that a jury find mitigating circumstances, weigh aggravating and mitigating circumstances, or have further input into determining the sentence. We are not persuaded by Hessler's arguments, and in the absence of authority, we reject his assertions that a jury must make such determinations.

(c) Exercise of Right to Jury in Aggravation Phase

As a final challenge to the constitutionality of the death penalty statutes, Hessler asserts that the statutory scheme improperly penalizes a defendant's exercise of the right to have a jury find aggravating circumstances. Hessler argues that if a defendant prefers to have the same fact finder determine both the aggravating circumstances and the sentence, the defendant must waive the right to have a jury find aggravating circumstances and instead must allow the sentencing panel to find aggravating circumstances because the statutory scheme does not allow a jury to determine the sentence. Hessler argues that being forced to make such a choice unconstitutionally burdens the defendant's assertion of the right to a jury determination of aggravating circumstances.

Hessler relies on *United States v. Jackson*, 390 U.S. 570, 88 S. Ct. 1209, 20 L. Ed. 2d 138 (1968), to support this argument. In *Jackson*, the U.S. Supreme Court found unconstitutional a federal statutory provision that authorized the imposition of a death sentence only when a jury recommended the death sentence. Under the statute, if the defendant waived jury trial or pled guilty, the maximum possible sentence the court could impose was a life sentence. The Court determined that the statutory provision was unconstitutional because it improperly coerced or encouraged the defendant to waive his or her Sixth Amendment right to a jury or his or her Fifth Amendment right to plead not guilty and because it needlessly penalized the defendant who asserted such rights.

We do not find Hessler's reliance on *Jackson* applicable or persuasive. Unlike *Jackson*, under the Nebraska death penalty statutes, a defendant cannot avoid the risk of a death penalty by waiving the right to a jury determination of aggravating circumstances; even if the defendant waived such right, the

sentencing panel could still impose a death penalty. Under the statutory provision in *Jackson*, the defendant could completely avoid the death penalty by waiving a jury trial or by pleading guilty. Under the Nebraska statutes, there is no such direct benefit achieved at the expense of waiving the right to a jury as there was in *Jackson*. By waiving the right to a jury under the Nebraska statutes, the sole benefit is that the defendant avoids the circumstance wherein the jury as fact finder finds aggravating circumstances and the judicial panel as fact finder determines the sentence. While the sentencing panel might be more thoroughly versed about the case if it had also found aggravating circumstances, this does not mean that the sentencing panel would necessarily make a sentencing decision that was more favorable to the defendant. Unlike *Jackson*, in which the benefit to waiving the right to a jury was the elimination of exposure to the death penalty, the Nebraska statutory scheme does not provide a clear advantage to a defendant who waives his or her right to have a jury determine aggravating circumstances. The Nebraska statutory scheme does not improperly coerce or encourage a defendant to waive his or her right to a jury and does not penalize a defendant who asserts such right. We reject Hessler's argument that the statutory scheme is unconstitutional pursuant to *Jackson*.

### (d) Conclusion

Having concluded that each of Hessler's challenges to the constitutionality of Nebraska death penalty statutes is without merit, as a matter of law, we reject Hessler's fifth assignment of error.

### 6. No Error in Refusal of Instruction Requiring Jury to Make Unanimous, Written Findings of Fact in Aggravation Phase

In his sixth assignment of error, Hessler asserts that the court erred when it refused his requested instruction in the aggravation phase of the trial that would have required the jury to unanimously find facts supporting each alleged aggravating circumstance and to set forth such findings in writing. To establish reversible error from a court's refusal to give a requested

instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Blair*, 272 Neb. 951, 726 N.W.2d 185 (2007). We conclude that the court did not err in refusing the instruction, because the instruction did not accurately state the law and Hessler has not shown that he was prejudiced by the refusal to give the instruction.

Hessler requested an instruction to the jury in the aggravation phase which read:

> You, the jury, shall make written findings of fact based upon the trial of guilt and the aggravation hearing, identifying which, if any, of the alleged aggravating circumstances have been proven to exist beyond a reasonable doubt. Each finding of fact with respect to each alleged aggravating circumstance shall be unanimous. If you are unable to reach a unanimous finding of fact with respect to an aggravating circumstance, you must find that the State did not prove the alleged aggravating circumstance.

Hessler argues that the instruction was necessary to avoid the burden on the right to a jury trial found to be unconstitutional in *United States v. Jackson*, 390 U.S. 570, 88 S. Ct. 1209, 20 L. Ed. 2d 138 (1968). Hessler asserts that if the instruction were given, it could ameliorate the negative effects wherein the jury finds aggravating circumstances and the sentencing panel determines the sentences. He argues that when the jury finds aggravating circumstances, the sentencing panel is not adequately familiar with the facts underlying the aggravating circumstances to properly weigh such circumstances. Hessler also notes that if the sentencing panel made findings on aggravating circumstances, the panel would be statutorily required to be unanimous regarding the facts supporting an aggravating circumstance and to set forth such facts in a written order. Hessler argues that the jury should also be required to be unanimous regarding the specific facts that support an aggravating circumstance and that the jury should be required to set forth such facts in writing in order to better inform the sentencing panel's decision.

We note that in the aggravation phase in this case, the court instructed the jury that in order to find that an aggravating circumstance existed, it needed to "unanimously agree beyond a reasonable doubt that an aggravating circumstance is true" and "unanimously decide that the state proved each essential element of an aggravating circumstance beyond a reasonable doubt." Because the court properly instructed the jury that it needed to be unanimous in finding that the State proved the existence of an aggravating circumstance and each element of such circumstance and that the Nebraska death penalty statutes require no more, Hessler has failed to demonstrate any error of law in the instruction given or prejudice from the failure to give the instruction he requested.

Nebraska statutes require that when the right to a jury determination of aggravating circumstances has been waived and the sentencing panel finds aggravating circumstances, the "panel shall make written findings of fact . . . identifying which, if any, of the alleged aggravating circumstances have been proven" and that "[e]ach finding of fact with respect to each alleged aggravating circumstance shall be unanimous." § 29-2521(2). However, when the jury determines aggravating circumstances, the statutes provide only that the jury "shall deliberate and return a verdict as to the existence or nonexistence of each alleged aggravating circumstance," that "[e]ach aggravating circumstance shall be proved beyond a reasonable doubt," and that "[e]ach verdict with respect to each alleged aggravating circumstance shall be unanimous." § 29-2520(4)(f). The statutes do not require a jury to make written findings of fact or to be unanimous regarding the specific facts that support its verdict. The statutes require only that the jury return a verdict as to each alleged aggravating circumstance and that each such verdict be unanimous. The instructions given by the court in this case accurately stated the law, and the instruction requested by Hessler did not accurately state the law.

Hessler's reliance on *United States v. Jackson*, 390 U.S. 570, 88 S. Ct. 1209, 20 L. Ed. 2d 138 (1968), in connection with this assignment of error is not persuasive. As noted in connection with the previous assignment of error, Hessler asserts that there are inherent disadvantages in the situation where the jury finds

aggravating circumstances and the sentencing panel determines the sentence and that such disadvantages coerce or encourage a defendant to waive his or her right to a jury determination of aggravating circumstances and needlessly penalize defendants who assert such right. Hessler asserts that if the jury were required to make unanimous written findings of fact, it would lessen these perceived disadvantages. As we concluded in connection with the previous assignment of error, the Nebraska statutes are not unconstitutional under *Jackson*. The statutes do not require unanimous written findings of fact, and no such requirement need be imposed in order to save the statutes from being unconstitutional.

Neither *Jackson* nor other authority requires that the jury make unanimous written findings of fact. Because the tendered instruction was not a correct statement of law and because Hessler has shown no prejudice, the court's refusal to give Hessler's requested instruction was not reversible error. We reject Hessler's sixth assignment of error.

### 7. District Court Did Not Err in Granting Hessler's Waiver of Right to Counsel and Allowing Him to Appear Pro Se at Sentencing

Hessler, through appellate counsel, asserts that the district court erred when it granted his pro se motion to waive counsel and allowed him to appear pro se at the sentencing proceeding. He specifically claims that the court erred when it failed to conduct a hearing to determine his competency to waive counsel and when it found that he knowingly, voluntarily, and intelligently waived his right to counsel. On the record before us, we conclude that the court did not err in granting Hessler's motion to waive counsel.

#### (a) Standards for Determining Whether Defendant May Waive Counsel

Hessler cites *Godinez v. Moran*, 509 U.S. 389, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993), and asserts that the inquiry into whether a defendant should be allowed to waive counsel is a two-step process in which the court considers, first, whether the defendant is competent to waive counsel and, second, whether

the defendant has knowingly and voluntarily waived counsel. Hessler argues that the court failed to follow *Godinez* because the court did not sua sponte conduct a competency hearing and did not make an explicit finding that he was competent to waive counsel. He also claims that the Court erred when it determined that his waiver of counsel was made knowingly, voluntarily, and intelligently.

In *Godinez*, the U.S. Supreme Court referred to what it described as a "two-part inquiry," 509 U.S. at 401, into whether a court should accept a defendant's waiver of counsel. The Court indicated that where a defendant seeks to waive counsel, the trial court must be assured that the defendant is competent to do so and that "[i]n addition to determining that a defendant who seeks to plead guilty or waive counsel is competent, a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary." 509 U.S. at 400. The two-part inquiry set forth in *Godinez* is therefore, first, a determination that the defendant is competent to waive counsel and, second, a determination that the waiver is knowing and voluntary.

The Court in *Godinez* also stated that the standard for determining whether a defendant is competent to waive counsel is the same as the standard for determining whether a defendant is competent to stand trial. In this regard, the Court stated that the standard for competence is "whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" 509 U.S. at 396. See *People v. Halvorsen*, 42 Cal. 4th 379, 165 P.3d 512, 64 Cal. Rptr. 3d 721 (2007) (recognizing *Godinez*' holding that standard for competency to waive trial is same as standard for competency to stand trial where defendant argued that court should have had doubt regarding his competency to stand trial after court concluded he was incapable of representing himself). Finally, in a footnote in *Godinez*, the Court noted:

> We do not mean to suggest, of course, that a court is required to make a competency determination in every case in which a defendant seeks to plead guilty or to waive

his right to counsel. As in any criminal case, a competency determination is necessary only when a court has reason to doubt the defendant's competence.

509 U.S. at 401 n.13.

In response to Hessler's arguments, the State asserts that the court's inquiry in this case met the requirements set forth in *State v. Dunster*, 262 Neb. 329, 631 N.W.2d 879 (2001), and that the record supported a finding that Hessler's waiver of counsel was made knowingly, voluntarily, and intelligently. In *Dunster*, we stated, "A defendant may waive the constitutional right to counsel, so long as the waiver is made knowingly, voluntarily, and intelligently." 262 Neb. at 349, 681 N.W.2d at 898. However, we also noted in *Dunster* that before granting the defendant's request to discharge counsel, defense counsel had questioned the defendant's competence to waive counsel and the trial court received evidence relative to the defendant's competence and determined that the defendant was competent. In concluding that the trial court in *Dunster* did not err in granting the request to discharge counsel, we determined that "[t]he record shows that [the defendant] was competent and his request to discharge counsel was made knowingly, intelligently, and voluntarily." 262 Neb. at 355, 681 N.W.2d at 902. Thus, as is apparent in *Dunster*, our jurisprudence is consistent with the two-part inquiry in *Godinez v. Moran*, 509 U.S. 389, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993), which requires both that the trial court be assured that the defendant is competent to waive counsel and that the waiver is made knowingly, voluntarily, and intelligently.

(b) On the Record Before Us, the District Court Did Not
Have Reason to Doubt Hessler's Competence and
No Competency Hearing Was Required

Although the analysis of whether a defendant may waive counsel is a two-part inquiry involving competence and waiver, a formal competency determination is not necessary in every case in which a defendant seeks to waive counsel. As noted above, pursuant to footnote 13 in *Godinez*, an explicit competency determination is necessary only when the court has reason to doubt the defendant's competence. Unlike *Dunster*,

*supra*, trial counsel in this case did not move for a competency hearing as a predicate to the court's consideration of Hessler's motion to waive counsel. Limiting our consideration only to the record on appeal, as we must, we determine that the proceedings did not provide reason to doubt Hessler's competence to waive counsel and that the court did not err when a competency hearing was not conducted, nor did it err when it did not make an explicit determination that Hessler was competent to waive counsel.

As noted above, the standard for determining competence is "whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" *Godinez*, 509 U.S. at 396. When Hessler filed his motion to waive counsel, he was still represented by counsel, and counsel did not move for a determination of Hessler's competence at that time, compare *Dunster, supra*, and there is no indication in the record on appeal that counsel had earlier challenged Hessler's competence to stand trial. There was no indication throughout pretrial proceedings and the trial itself that Hessler was unable to consult with counsel with a reasonable degree of rational understanding. To the contrary, the record contains references to consultations between Hessler and his counsel, both prior to and during the trial.

With respect to whether Hessler had a rational and factual understanding of the proceedings, we note that the court had observed Hessler over many months prior to trial and at trial, and that although Hessler indicated he was not on medications on the day the court considered his request to waive counsel, the court was in a position to be satisfied that any medication Hessler was or was not on did not compromise his present competence to waive counsel. See *LaHood v. State*, 171 S.W.3d 613 (Tex. App. 2005) (stating, generally, that although defendant was on medication, competency inquiry not mandated where there was no indication of present inability to communicate or understand proceeding). See, also, *U.S. v. Dalman*, 994 F.2d 537 (8th Cir. 1993). We also note that although Hessler's pro se filings, including his motion to waive counsel, contain irrelevant matter, they nevertheless indicate that Hessler understood the

factual nature of the proceedings against him and the potential consequences of such proceedings. Such filings indicate that he had a rational and factual understanding that he was being prosecuted for the death of Heather and that the death penalty was a potential punishment for that crime. See *People v. Halvorsen*, 42 Cal. 4th 379, 403, 165 P.3d 512, 529, 64 Cal. Rptr. 3d 721, 741 (2007) (concluding that although defendant's "'rambling, marginally relevant speeches'" might evidence some form of mental illness, record did not show that defendant lacked understanding of nature of proceedings and that more than "'bizarre actions'" or "'bizarre statements'" were required to raise doubt about competence). On the record before us and under the standard set forth in *Godinez v. Moran*, 509 U.S. 389, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993), we believe that the trial court could reasonably determine that Hessler appeared to have an understanding of the proceedings and that therefore, the court did not have reason to doubt Hessler's competence to waive counsel. Thus, on this record, the court did not err when it did not declare a doubt regarding Hessler's competence and did not conduct a competency hearing, nor did it err when it did not make an explicit competency determination in connection with Hessler's motion to waive counsel.

(c) District Court Did Not Err in Finding Hessler's Waiver
of Counsel Was Knowing, Voluntary, and Intelligent

Hessler claims that even if he was competent, his waiver of counsel was not knowing, voluntary, and intelligent. We determine that the court was not clearly erroneous in finding that his waiver of counsel was knowing, voluntary, and intelligent. When a criminal defendant has waived the right to counsel, this court reviews the record to determine whether under the totality of the circumstances, the defendant was sufficiently aware of his or her right to counsel and the possible consequences of his or her decision to forgo the aid of counsel. *State v. Gunther*, 271 Neb. 874, 716 N.W.2d 691 (2006).

We note that Hessler was represented by counsel throughout pretrial proceedings and during the guilt and aggravation phases of his trial. In other cases, we have found that the fact that a defendant has had the advice of counsel throughout the

prosecution is an indication that the defendant's waiver of counsel and election to proceed pro se was knowing and voluntary. *Gunther, supra; State v. Wilson,* 252 Neb. 637, 564 N.W.2d 241 (1997). The fact that Hessler was represented at earlier stages indicates that he was aware of his right to counsel and that he knew what he would forgo if he waived counsel.

We also note that the court questioned Hessler extensively regarding his knowledge of his right to counsel and the consequences of waiving counsel. Hessler's answers indicated that he was aware of his right to counsel and that he knew the consequences of waiving such right. The court also questioned Hessler regarding whether his waiver was voluntary, and Hessler's answers indicated that he was not being forced or coerced into waiving counsel. Based on our review of the record, we conclude that under the totality of the circumstances, Hessler was aware of his right to counsel and the consequences of waiving such right and that the court was not clearly erroneous in its determination that Hessler's waiver of counsel was knowing, voluntary, and intelligent.

### (d) Conclusion

On the record before us, we cannot say that the court erred when it did not sua sponte conduct a competency hearing, and there was no error when the court did not make an explicit determination that Hessler was competent to waive counsel. Further, the court was not clearly erroneous in its determination that Hessler's waiver was knowing, voluntary, and intelligent. We therefore conclude that on this record, the district court did not err in granting Hessler's motion to waive counsel and appear pro se at sentencing. Accordingly, we reject Hessler's seventh assignment of error.

### 8. No Error in Receipt of Records of Guilt and Aggravation Phases of Trial at Sentencing Proceeding

In his final assignment of error, Hessler asserts that the district court erred in the sentencing phase by receiving into evidence the records of the guilt and aggravation phases of the trial and in using such evidence to determine his sentences. Hessler

argues that the sentencing panel's receipt of such evidence was erroneous because it was not authorized by statute. We conclude that the court was authorized to consider such evidence and did not err in admitting it.

We have stated that the sentencing phase is separate and apart from the trial phase and that the traditional rules of evidence may be relaxed following conviction so that the sentencing authority can receive all information pertinent to the imposition of sentence. *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000). We have also stated that a sentencing court has broad discretion as to the source and type of evidence and information which may be used in determining the kind and extent of the punishment to be imposed, and evidence may be presented as to any matter that the court deems relevant to the sentence. *Id.* We have also stated that "the sentencing court, in imposing the death penalty, has . . . the statutory *authority* to consider the trial record." *State v. Ryan*, 248 Neb. 405, 442, 534 N.W.2d 766, 790 (1995). We cited § 29-2521 (Reissue 1995) as the statutory basis for these statements in *Ryan* and *Bjorklund*. The version of § 29-2521 in effect at the time of *Ryan* and *Bjorklund* provided that in the sentencing proceeding, "evidence may be presented as to any matter that the court deems relevant to sentence," including matters relating to aggravating and mitigating circumstances, and that "[a]ny such evidence which the court deems to have probative value may be received." As indicated below, we believe the principles referred to in *Ryan* and *Bjorklund* apply under the current version of Nebraska's death penalty statutes.

In the current version, § 29-2521(2) (Cum. Supp. 2006) addresses sentencing determination proceedings wherein the defendant has waived the right to a jury determination of aggravating circumstances and the sentencing panel decides aggravating circumstances. Section 29-2521(2) contains provisions similar to those quoted above from the prior version. Section 29-2521(3) of the current version addresses sentencing determination proceedings wherein, as in the present case, a jury has found aggravating circumstances and a sentencing

panel determines the sentence. Section 29-2521(3) provides that evidence may be presented as to "any matter that the presiding judge deems relevant to . . . mitigation . . . and . . . sentence excessiveness or disproportionality." The statute further provides that "[a]ny such evidence which the presiding judge deems to have probative value may be received." We determine that the current version of § 29-2521(2) and (3) gives the sentencing panel statutory authority to consider the trial record.

Section 29-2521 gives broad discretion to the presiding judge of the sentencing panel to determine the type of evidence relevant to the sentencing determination. In addition, the death penalty statutes read as a whole make clear that the sentencing panel needs to consider evidence of the crime and of aggravating circumstances in order to properly perform its balancing and proportionality sentencing functions. Under Neb. Rev. Stat. § 29-2522 (Cum. Supp. 2006), the sentencing panel is required to determine whether aggravating circumstances justify imposition of a death sentence, whether mitigating circumstances exceed or approach the weight of aggravating circumstances, and whether a death sentence is excessive or disproportionate to the penalty imposed in similar cases "considering both the crime and the defendant." The records of the guilt and aggravation phases of the trial clearly have probative value regarding these issues. The sentencing panel needs to understand the circumstances of the crime to "consider . . . both the crime and the defendant." *Id.* The record of the guilt phase provides information regarding the circumstances of the crime which aids the sentencing panel in determining whether a death sentence would be excessive or disproportionate, and the record of the aggravation phase assists the sentencing panel in the conduct of its balancing duty. Receipt of the records of the guilt and aggravation phases is authorized under the discretion given the presiding judge under § 29-2521.

We conclude that the court in this case did not err by receiving evidence of the guilt and aggravation phases of the trial in the sentencing hearing. We reject Hessler's final assignment of error.

### 9. Hessler's Sentence Is Proportional to Those in Similar Cases

Finally, we are required to determine whether the death sentence imposed on Hessler is proportional to sentences imposed in similar cases. Pursuant to Neb. Rev. Stat. § 29-2521.03 (Reissue 1995), this court is required, upon appeal, to determine the propriety of a death sentence by conducting a proportionality review. Proportionality review under § 29-2521.03 looks only to other cases in which the death penalty has been imposed, *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000), and requires us to compare the aggravating and mitigating circumstances of this case with those present in other cases in which the death penalty was imposed, and ensure that the sentence imposed in this case is no greater than those imposed in other cases with the same or similar circumstances, *State v. Gales*, 269 Neb. 443, 694 N.W.2d 124 (2005). See, *State v. Dunster*, 262 Neb. 329, 631 N.W.2d 879 (2001); *Bjorklund, supra*; *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998).

In the present case, the State alleged, and the jury and sentencing panel found, the existence of three statutory aggravating circumstances: (1) Hessler had a substantial prior history of serious assaultive or terrorizing criminal activity (§ 29-2523(1)(a)); (2) the murder was committed in an effort to conceal the commission of the crimes of the kidnapping and sexual assault of Heather and the sexual assault of another girl, J.B. (§ 29-2523(1)(b)); and (3) the murder was especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence (§ 29-2523(1)(d)). At sentencing, Hessler offered no evidence other than his "Interlocutory Statement of the Defendant" that would bear on mitigating circumstances, and the sentencing panel concluded that no statutory and no nonstatutory mitigating circumstances were established. The panel also concluded that a death sentence would not be excessive or disproportionate to penalties imposed in similar cases, considering both the crime and the defendant.

We have reviewed our relevant decisions on direct appeal from other cases in which aggravating circumstances were found and the death penalty was imposed by the district court. See, e.g., *Gales, supra* (and cases gathered therein). In considering

proportionality in its sentencing order, the sentencing panel in this case took particular note of the circumstances presented in *Gales, supra*; *State v. Joubert*, 224 Neb. 411, 399 N.W.2d 237 (1986); *Bjorklund, supra*; and *State v. Otey*, 205 Neb. 90, 287 N.W.2d 36 (1979). We also find these cases to be of particular note in considering the proportionality of the sentence in this case. In *Gales*, the defendant was convicted of the first degree murder of a 13-year-old girl he had sexually assaulted, the first degree murder of the girl's 7-year-old brother, and the attempted second degree murder of the children's mother. The defendant in *Gales* was sentenced to death based upon, inter alia, aggravating circumstances under § 29-2523(1)(a), (b), and (d). In *Joubert*, the defendant was convicted of the first degree murders of a 13-year-old boy and a 12-year-old boy, both of whom disappeared during early morning hours, one while delivering newspapers. The defendant in *Joubert* was sentenced to death based upon aggravating circumstances under § 29-2523(1)(a), (b), and (d). In *Bjorklund*, the defendant was convicted of the first degree murder of an 18-year-old girl he had sexually assaulted, and the defendant was sentenced to death based upon aggravating circumstances under § 29-2523(1)(a), (b), and (d). In *Otey*, the defendant was convicted of the first degree murder of a woman he had sexually assaulted, and the defendant was sentenced to death based upon aggravating circumstances under § 29-2523(1)(b) and (d). We further note *State v. Williams*, 205 Neb. 56, 287 N.W.2d 18 (1979), in which the defendant was convicted of the first degree murders of two women and the sexual assault of another woman and was sentenced to death based upon aggravating circumstances similar to those in the present case. Having reviewed the relevant cases, we find that the imposition of the death sentence in this case is proportional to that in the same or similar circumstances.

## VI. CONCLUSION

Having rejected each of Hessler's assignments of error and having found that the death sentence imposed in this case is proportional, we affirm Hessler's convictions and sentences.

AFFIRMED.

HEAVICAN, C.J., not participating.